UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NORMAN B. NEWMAN,  )
solely as Liquidating Trustee  )
of the World Marketing Liquidating Trust,  )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )   No. 17-cv-6978
                                           )
CRANE, HEYMAN, SIMON, WELCH & CLAR,  )
                                           )   Judge Thomas M. Durkin
          Defendant.                       )

# MEMORANDUM OPINION AND ORDER

Norman V. Newman, as the liquidating trustee of the World Marketing Liquidating Trust ("Trustee") brought this action against law firm Crane, Heyman, Simon, Welch & Clar ("Crane Heyman"), alleging Crane Heyman committed malpractice during the bankruptcy of World Marketing.[1] Before the Court is Crane Heyman's motion to dismiss. For the following reasons, Crane Heyman's motion is denied.

## BACKGROUND

In the summer of 2015, World Marketing ran into financial trouble. It began working with its lender to implement a turnaround plan to improve its finances. The plan did not work. On September 15, 2016, World Marketing contacted Crane Heyman to provide it guidance if a bankruptcy filing became necessary. R. 1 ¶¶ 13-

---

[1] The debtors in the bankruptcy proceeding were World Marketing, LLC, World Marketing Atlanta, LLC, and World Marketing Dallas, LLC. The Court will refer to them collectively as "World Marketing."

14. By September 25, 2015, World Marketing anticipated filing for bankruptcy and signed an engagement letter with Crane Heyman for Crane Heyman's "representation of [World Marketing] in a Chapter 11 bankruptcy proceeding." *Id.* ¶ 15. World Marketing filed for bankruptcy on September 28, 2015 in the Northern District of Illinois. *Id.* ¶ 22.

The Trustee alleges that during Crane Heyman's representation of World Marketing, Crane Heyman failed to advise World Marketing that it was subject to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 ("WARN Act"). As a result, World Marketing terminated over 300 employees without giving them sufficient notice. *Id.* ¶ 17. On October 21, 2015, World Marketing's former employees filed a class action alleging that their terminations violated the WARN Act. *Id.* ¶ 24. The class action eventually became a disputed proof of claim in World Marketing's bankruptcy case (the "WARN Claim"). Following confirmation of the bankruptcy plan, the Trustee objected to and litigated the WARN Claim, which sought roughly $4 million in damages. *Id.* ¶ 25. In February 2017, the bankruptcy court overruled the Trustee's objection, subjecting the trust to $4 million in liability. *Id.* ¶ 26. In doing so, the bankruptcy court held that an exception that would not require notice to the employees—the liquidating fiduciary exception—did not apply. *See In re World Marketing Chicago, LLC*, 564 B.R. 587, 600-603 (Bankr. N.D. Ill. 2017) (explaining that the issue was one of first impression in this circuit). The Trustee alleges that had Crane Heyman satisfied its professional standard of care

and advised World Marketing to issue proper notices, the Trustee would have prevailed. R. 1 ¶ 26.

Crane Heyman moves to dismiss on two bases. First, it argues this Court lacks subject matter jurisdiction over the Trustee's claim because of the *Barton* doctrine. Second, Crane Heyman argues the Trustee's case is barred by the principles of res judicata and collateral estoppel. The Court will address each argument in turn.

## DISCUSSION

### I. The *Barton* Doctrine

The so-called "*Barton* Doctrine" takes its name from the decision rendered in *Barton v. Barbour,* 104 U.S. 126 (1881). There, Barbour had been appointed equity receiver in Virginia state court to operate a railroad company. Afterwards, a railroad passenger, Barton, was injured and brought a tort action against the receiver in the District of Columbia. The Supreme Court held that, as a matter of federal common law, "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Id.* at 128. Without such leave of court, the other forum "had no jurisdiction to entertain [the] suit." *Id.* at 131.

The majority opinion in *Barton* explained that the doctrine was necessary to avoid plaintiffs obtaining an "advantage over the other claimants" as to the distribution of "the assets in the receiver's hands." *Id.* at 128. The Court also explained that the requirement served to prevent the "usurpation of the powers and duties which belonged exclusively to another court" and protect "the duty of that court

to distribute the trust assets to creditors equitably and according to their respective priorities." *Id*. at 136.

In a comparatively more recent case, the Seventh Circuit further explained the policy reasons for not allowing appointed receivers such as trustees to be sued without approval of the appointing courts:

> This concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on. The threat of his being distracted or intimidated is then very great . . . [w]ithout the requirement, trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern). Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively. It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.
>
> . . .
>
> At stake . . . is a concern . . . with the integrity of the bankruptcy jurisdiction. If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, that court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa. A creditor who had gotten nothing in the bankruptcy proceeding might sue the trustee for negligence in failing to maximize the assets available to creditors, or to the particular creditor. A debtor who had failed to obtain a discharge might through a suit against the trustee obtain the funds necessary to pay the debt that had not been discharged.

*In re Linton,* 136 F.3d 544, 545 (7th Cir. 1998).

Courts have included attorneys hired by a trustee and other representatives of the trustee as among those actors who cannot be sued without the plaintiff first

4

obtaining leave of the bankruptcy court. *See Lawrence v. Goldberg*, 573 F.3d 1265, 1269-70 (11th Cir. 2009); *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1241 (6th Cir. 1993).

The circumstances here are not the usual circumstances observed in most cases applying the *Barton* doctrine. Both sides here are or were court appointed parties rather than third parties suing court appointed trustees for conduct not directly related to the bankruptcy case. And the plaintiff, the Trustee, is the current trustee of the liquidating trust. For this reason, the Trustee argues the *Barton* doctrine does not apply to such situations because the same policy considerations are not implicated.

The Court agrees with the Trustee that the concerns discussed by the *Barton* court and the Seventh Circuit in *Linton* are not implicated here. First, there is no concern that the Trustee is attempting to circumvent the appointing court's supervision to obtain some advantage over other claimants. The Trustee is not a creditor seeking faster payment. Rather, he is the estate representative administering the estate by attempting to liquidate one of its claims, and presumably bring more value to the estate. Second, there is no threat that either he or Crane Heyman will be distracted by an ancillary proceeding—litigating claims is precisely the Trustee's role, and Crane Heyman is already out of the case. Indeed, requiring trustees to seek additional leave beyond what the bankruptcy court already approved through the bankruptcy plan only causes additional delay and distraction to the Trustee in administering and liquidating the estate.

5

Even if the *Barton* doctrine did apply, it is clear that the bankruptcy court granted Trustee permission to sue Crane Heyman for legal malpractice for violations of the WARN Act. A plan approved by the bankruptcy court is sufficient to confer such authority to a trustee. *See Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 902 (7th Cir. 2010) (explaining that "the terms of the plan of reorganization (and of the trust instrument) govern the permissible duties of a trustee after bankruptcy"); *In re BC Funding*, LLC, 519 B.R. 394, 410 (Bankr. E.D.N.Y. 2014) ("[T]he Court finds that the powers and duties bestowed upon the [estate representative] by the confirmed Plan, the Confirmation Order and the LLC Agreement—which was specifically approved by the Confirmation Order—provide the sole guidance for the Plaintiff's authority to prosecute the subject causes of action."). On the other hand, courts have stressed that parties cannot contract to suit—the appointing court must approve suits to avoid the *Barton* doctrine. *See In re Sedgwick*, 560 B.R. 786, 796 (N.D. Cal. 2016) ("Whether or not to grant leave under *Barton* to bring suit in another forum is at the discretion of the court. Appellant has provided no authority to support his contention that parties can enter into an agreement to waive the requirement of *Barton* approval, and effectively circumvent this power from the court."). Here, the bankruptcy court approved the bankruptcy plan,[2] and through it explicitly gave the Trustee the authority to sue Crane Heyman for malpractice related to the WARN Act.

Specifically, Section 7.2 of the plan gives the Trustee the exclusive right to enforce any "claims, rights or Causes of Action" including "malpractice, . . . for any

---

[2] *See In re World Mktg. Chi., LLC, et al.*, No. 15-32968 (Bankr. N.D. Ill.), at Dkt. 638.

liability associated with the Debtors' failure to give notice under the WARN Act prior to the Petition Date to the extent that such notice was required as a matter of law." R. 29-1 at APP022-APP025. The plan gives the Trustee this right "without any further order of the Bankruptcy Court." *Id.* at APP023. Further, Section 7.10 of the plan grants the Trustee, in all matters "arising in, arising under or related to" the bankruptcy cases, "the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction." *Id.* at APP030.

Crane Heyman focuses on the language "other courts of competent jurisdiction" in Section 7.10 to argue that because the Trustee does not have authorization to sue, this Court is not of "competent jurisdiction." Crane Heyman argues the plan does not authorize the Trustee to bring a lawsuit in a non-bankruptcy court, only in "courts of competent jurisdiction" with the bankruptcy court's approval. Crane Heyman's argument is entirely circular. The plain language of the bankruptcy plan indicates the bankruptcy court authorized the Trustee to bring a suit for malpractice for the WARN Act notice failure. It granted the Trustee this right either in the "bankruptcy court or other courts of competent jurisdiction." R. 29-1 at APP030. This is sufficient to meet the approval of the bankruptcy court required by the *Barton* doctrine.

II. **Preclusion**

Next, Crane Heyman argues the bankruptcy court has already adjudicated the issue of malpractice during the determination of Crane Heyman's final fee application.

7

At this point, a bit of background into the relevant bankruptcy proceedings is necessary. On July 11, 2016, Crane Heyman filed its final fee application. On August 8, 2016, the Trustee objected to the application, arguing that Crane Heyman had engaged in legal malpractice related to its alleged failure to give World Marketing proper legal advice regarding the WARN Act. R. 21-3. The Trustee alleged "potential legal claims against Crane Heyman for their role as Debtors' counsel in these cases, including but not limited to malpractice liability arising under the WARN ACT." *Id*. at ¶ 3.

On November 16, 2016, the bankruptcy court denied the Trustee's objection and granted the final fee application. *See* R. 21-8. In doing so, the bankruptcy court recognized the contingent nature of Trustee's claim—because the WARN claim had not yet been adjudicated, the Trustee could not bring a malpractice claim, notwithstanding the deadline to object to the fee petition:

> It is not a valid objection to say I might have an objection. That's what you're really saying. You said it with respect to the three-tenths of an hour, you're saying it with respect to the malpractice: We may have a problem with their being compensated; please reserve and don't rule on this now. That's not the way—the order of the court. You have a deadline to bring an objection. And you brought an objection, but your objection doesn't articulate malpractice, it articulates your reservations with respect to possible malpractice claims.

R. 21-8 at 3-4

The court further explained that it would not delay ruling on the final fee application "because of another process that may or may not occur." *Id*. at 4. It noted that the Trustee was "required to articulate an objection with respect to this final fee application," but had failed do so. *Id*. Instead, the Trustee only "articulated the

8

possibility of an objection," *id.*, which the court found insufficient to sustain an objection to the final fee application. The bankruptcy court explicitly declined to determine whether its ruling precluded a later malpractice claim against any party. *Id.* at 5.

Crane Heyman argues that the bankruptcy court's determination of the final fee application precludes the Trustee's malpractice claim against it. Crane Heyman makes its preclusion argument with respect to both res judicata (claim preclusion) and collateral estoppel (issue preclusion). The Court will address each briefly, though it finds the same reasoning applies to both preclusion doctrines.

For res judicata to apply, there must be: (1) a final judgment on the merits; (2) an identity of parties; and (3) an identity of the cause of action. *See Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008). If these elements are present, res judicata will bar re-litigation not only of issues that were actually decided in a prior proceeding, but also all issues that could have been raised in that proceeding. *See D&K Props. Crystal Lake v. Mutual Life Ins. Co.*, 112 F.3d 257, 259 (7th Cir. 1997). But courts will refuse to apply "res judicata to preclude a second suit that is based on a claim that could not have been asserted in the first suit." *Alvear-Velez*, 540 F.3d at 678. This includes claims that did not accrue during the first suit. *See Waivio v. Bd. of Trs.*, 290 F. App'x 935, 938 (7th Cir. 2008); *see also ASARCO, LLC v. Mont. Res., Inc.*, 858 F.3d 949, 958 (5th Cir. 2017) (recognizing that res judicata does not bar claims contingent on future events); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521,

530 (6th Cir. 2006) ("[R]es judicata does not apply to claims that were not ripe at the time of the first suit.").

Here, the parties dispute when the malpractice claim accrued. The Trustee argues that under Illinois law, the malpractice claim did not accrue until the WARN Claim was adjudicated against World Marketing on February 24, 2017. Crane Heyman on the other hand, argues that the relevant inquiry is based on federal principles of res judicata, and that under those principles, the malpractice claim accrued before the bankruptcy court's adjudication of the WARN Claim—when the Trustee became aware of the claim. R. 21 at 18; R. 34 at 6-7.

The Court agrees with Crane Heyman that since the earlier action was brought in federal court, federal, not state, res judicata principles govern the preclusive effect of a prior judgment. *See In re Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987); *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1289 n. 4 (7th Cir. 1993) ("[w]here the earlier action is brought in federal court, the federal rules of res judicata apply."). But this does not mean that federal law governs accrual of the claim. Rather, the Trustee's malpractice claim is a state law claim. State law thus governs when the Trustee could bring its malpractice claim, even though federal law will govern the res judicata analysis. *See In re Micro-Time Mgmt. Sys., Inc.,* 983 F.2d 1067 (Table) at *5 (6th Cir. 1993) (applying Michigan law to determine when a malpractice claim accrued for purposes of res judicata following a bankruptcy decision).

Under Illinois law, "in order to prevail on a claim of attorney malpractice, a plaintiff must succeed in proving four elements: (1) an attorney-client relationship

10

giving rise to a duty on the attorney's part; (2) a negligent act or omission by the attorney amounting to a breach of that duty; (3) proximate cause establishing that but for the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages." *Mihailovich v. Laatsch,* 359 F.3d 892, 904-05 (7th Cir. 2004); *see also N. Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 837 N.E.2d 99, 106 (Ill. 2005). "For purposes of a legal malpractice action, a client is not considered to be injured unless and until he has suffered a loss for which he may seek monetary damages." *Landau*, 837 N.E.2d at 107. World Marketing could not meet the fourth element required to bring a claim for malpractice until February 2017, when the bankruptcy court allowed the employees' WARN Claim. Before then, the malpractice claim was merely speculative because the bankruptcy court could have found that the liquidating fiduciary exception applied, meaning WARN Act notice was not required. Thus, at the time the bankruptcy court determined the final fee application (in November 2016), the Trustee could not have brought the malpractice claim, because it did not yet exist. "Where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists." *Id*.

As a result, res judicata cannot apply. *See Davenport v. Djourabchi*, 316 F. Supp. 3d 58, 64 (D.D.C. 2018) (res judicata did not bar subsequent action because the plaintiffs were prohibited from bringing their state and common law claims for damages in the prior bankruptcy proceedings).

11

For similar reasons, the Trustee's malpractice claim is also not barred by collateral estoppel. Collateral estoppel applies if "(1) [t]he party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." *King v. Burlington N. & Santa Fe Ry. Co.*, 445 F. Supp. 2d 964, 971 (N.D. Ill. 2006), *aff'd*, 538 F.3d 814 (7th Cir. 2008).

Here, the Trustee's malpractice claim was never actually litigated and decided on the merits by the bankruptcy court, precluding a finding of collateral estoppel. The Trustee filed an objection to Crane Heyman's fee petition. R. 29-1 at 87. In the objection, the Trustee criticized Crane Heyman's billing practices and identified a "potential legal malpractice claim for liability arising as a result of claims made under the WARN Act." *Id*. at 90. The Trustee indicated that he must "object to Crane Heyman's Final Fee Application to ensure that potential causes of action against Crane Heyman are not later found to be barred or waived." *Id*. The Trustee asked the bankruptcy court to defer the final allowance of Crane Heyman's fees or expressly hold that final allowance and approval of Crane Heyman's fees would not bar the Trustee from asserting any claims against Crane Heyman based on preclusion doctrines. *Id*. at 91. As described above, the bankruptcy court's adjudication of the malpractice issue was limited—it held that the Trustee's objection was speculative. The bankruptcy court recognized the case law "that says if you don't raise an issue with respect to malpractice at the time of a fee application, you may be precluded

from bringing it later. There's a District of Columbia bankruptcy court case I think that says that pretty clearly." R. 29-1 at 131. But the court refused to allow the Trustee to "keep [his] foot in on the issue of malpractice" and defer dealing with the fee application. *Id.* Accordingly, the court denied the Trustee's objection. The court made no reference or determination as to Crane Heyman's negligence and did not otherwise address the issue of malpractice. Further, the order allowing Crane Heyman's final compensation and reimbursement of expenses did not make any findings of fact or discuss the issue of malpractice or the quality of Crane Heyman's legal services. *Id.* at 137. Accordingly, the malpractice claim was not "actually litigated and decided on the merits" to impose collateral estoppel now.

Crane Heyman frames the Trustee's attempt as an already litigated issue simply because the Trustee had knowledge of the claim at the final fee application hearing.[3] But knowledge is not the right inquiry here. There is no question that the

---

[3] The cases Crane Heyman cites in support of its position are inapposite. In those cases, there was no question that the malpractice had already taken place and the plaintiff had suffered harm (either through damages or an unfavorable ruling) when the bankruptcy court decided the final fee petition. And in those cases, the plaintiffs did not object to the fee petition. *See Weinberg v. Kaplan, LLC*, 699 Fed. App'x. 118 (3d Cir. 2017) (plaintiff did not contest fee application even though the bankruptcy court had already lifted the automatic stay against plaintiffs as a result of the defendant's conduct); *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 488 (D.C. Cir. 2009) (plaintiff represented it had "no outstanding claims against [the attorney] arising out of the bankruptcy proceedings" despite an unfavorable ruling issued more than a year prior to the fee application); *In re Intelogic Trace, Inc.*, 200 F.3d 382, 387 (5th Cir. 2000) (debtor discovered errors in accounting firm's services before the firm's fee application was approved, but the debtor declined to proceed on a malpractice claim, preferring instead to negotiate a reduction in fees from the firm); *In re Iannochino*, 242 F.3d 36, 49 (1st Cir. 2001) (plaintiffs alleged the representation produced "almost immediate negative results," but they failed to attend the hearing on the fees, causing the bankruptcy court to allow the fees in part);

Trustee knew of the potential for malpractice. In fact, he raised the issue with the bankruptcy court. The reason the Trustee's claim is not barred is because the bankruptcy court did not consider it and declined to allow the Trustee to defer the fee petition until the malpractice claim was ripe.

Further, it is not clear that the Trustee could have litigated the malpractice claim in the same proceeding as the fee petition at all. In a similar case to this one, the D.C. Circuit in *Davenport v. Djourabchi*, 316 F. Supp. 3d 58 (D.D.C. 2018) described that a 2007 change in the bankruptcy rules prevents parties from asserting damages in contested matters and affects the rulings of many of the cases discussed above. In *Davenport*, plaintiff Davenport filed for bankruptcy. The defendants filed a proof of claim with the bankruptcy court, alleging Davenport was in default on a note owed them. *Id.* at 61. Davenport initiated a contested matter in the bankruptcy court by filing an objection to the defendants' proof of claim. The bankruptcy court eventually ruled that Davenport was not in default on the note, but found that Davenport owed defendants a sum of money. *Id.* After that proceeding, Davenport filed a civil lawsuit against the defendants, alleging they harassed him. *Id.* The defendants moved to dismiss the civil lawsuit, arguing it was barred by res judicata because Davenport should have adjudicated his allegations in the bankruptcy court.

---

*Grausz v. Englander*, 321 F.3d 467, 470 (4th Cir. 2003) (debtor failed to object to fee petitions by attorney); *Trigee Found., Inc. v. Lerch, Early, & Brewer, Chtd. (In re Trigee Found., Inc.)*, 2016 WL 5360572, at *3, *7 (Bankr. D.D.C. Sept. 23, 2016) (Trigee did not object to the fee applications, despite actual notice of the malpractice before the fee applications were filed); *In re Sedgwick*, 560 B.R. 786, 794 (C.D. Cal. 2016) (appellant failed to raise claim for affirmative relief in bankruptcy proceedings).

14

The D.C. Circuit held Davenport's action was not barred by res judicata because Davenport could not have brought his damages claim in the contested action due to a change in the bankruptcy rules. Specifically, an amendment to Fed. R. Bankr. P. 3007 prevented Davenport from seeking monetary damages in the contested action regarding the note. *Id.* at 65. Instead, Davenport would have had to commence an adversary proceeding, which would have constituted a separate action. *Id.* at 66. The court acknowledged that Davenport could have initiated an adversary proceeding, but it explained that that was not the question on res judicata. Instead, res judicata looks at whether a claim could have been brought in the first *proceeding*, not whether it could have been brought in the previous *court*. *Id.* at 68. The court held because Davenport could not have brought his damages claim in the contested matter regarding fees, res judicata did not bar his action. *Id.*

The same is true here. The Trustee could not have sought affirmative monetary damages for malpractice in response to the final fee petition because the bankruptcy rules barred him from doing so. And he could not bring a malpractice claim in an adversary proceeding because the malpractice claim did not accrue until February 2017, when the bankruptcy court ruled that World Marketing did not meet the exception to giving WARN Act notice. The Court recognizes that some courts have held that a fee petition necessarily resolves any malpractice claim. *See In re Frazin*, 732 F.3d 313, 322 (5th Cir. 2013); *supra* n.3. But in those cases, the plaintiff failed to object to the fees at the time the court decided the issue. That is simply not the case here—the Trustee made an explicit objection to the fees based on the very malpractice

claim asserted now. But the Trustee was not given a full and fair opportunity to litigate the malpractice claims in the bankruptcy proceedings. For this reason, the Trustee may bring the malpractice claim now. Not allowing the Trustee to bring the malpractice claim in yet another proceeding would run contrary to the principles of preclusion—"[p]reclusion is designed to limit a plaintiff to one bite at the apple, not to prevent even that single bite." *Hurd v. D.C., Gov't*, 864 F.3d 671, 679 (D.C. Cir. 2017); *Poyner v. Murray*, 508 U.S. 931, 933 (1993) (A "full and fair opportunity to litigate the case below is a prerequisite to the principles of *res judicata*.").

## CONCLUSION

For the foregoing reasons, Defendant Crane, Heyman, Simon, Welch & Clar's motion to dismiss the complaint, R. 21, is denied.

ENTERED:

Dated: September 26, 2018

------------------------------------------
Honorable Thomas M. Durkin
United States District Judge

16