UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORMAN B. NEWMAN, as Liquidating Trustee of the World Marketing Trust,<br><br>    Plaintiff,<br><br>    v.<br><br>CRANE, HEYMAN, SIMON, WELCH, & CLAR,<br><br>    Defendant. | No. 17 C 6978<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

In September 2015, World Marketing Chicago, LLC, World Marketing Atlanta, LLC, and World Marketing Dallas, LLC (collectively "World Marketing") shut down their facilities, terminated most of their employees, and filed for bankruptcy. A class of World Marketing's former employees subsequently sued World Marketing under the Worker Adjustment and Retraining Notification Act ("WARN Act"), which requires 60 days' advance notice before an employer with 100 or more employees orders a plant closing or mass layoff. *See* 29 U.S.C. §§ 2101-2102.

Norman B. Newman, liquidating trustee of the World Marketing Liquidating Trust ("Trustee"), sued law firm Crane, Heyman, Simon, Welch & Clar ("Crane Heyman") for failing to advise World Marketing of its obligations under the WARN Act. The Trustee moved for partial summary judgment on Crane Heyman's second, third, and fourth affirmative defenses. That motion is granted in part and denied part.

1

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

In 2014, World Marketing Holdings, LLC entered into a credit agreement with its primary lender, Associated Bank. R. 123 ¶ 1. In July 2015, Associated Bank sent World Marketing a notice of default based on several violations of the credit agreement. *Id.* ¶ 2. On September 10, 2015, Associated Bank swept World Marketing's bank accounts, leaving the company without funds. *Id.* ¶ 3.

Five days later, World Marketing contacted Crane Heyman attorney Jeffrey Dan about possible representation should the company need to pursue bankruptcy. *Id.* ¶ 4. In Crane Heyman's initial discussions with World Marketing, Crane Heyman

brought up the possible need to send a WARN Act notice should the company close its operations. *Id.* ¶ 13. World Marketing President and Chief Operating Officer James Tyrone Jeffcoat told Crane Heyman that World Marketing had been advised that the WARN Act did not apply and that the company had already determined that it did not need to send a WARN notice. *Id.*

Over the next several days, World Marketing continued to try to secure funding. R. 110 ¶ 5. The company also executed a forbearance agreement and continued to work with Associated Bank to arrange refinancing. R. 123 ¶ 3. The company's efforts fell short, and on Friday, September 25, World Marketing began identifying the employees it would terminate once it filed for bankruptcy. R. 110 ¶ 8. The same day, Mr. Dan asked World Marketing to pay Crane Heyman's retainer, sign Crane Heyman's engagement letters, and sign resolutions authorizing Crane Heyman's retention and filing of the bankruptcy petitions. *Id.* ¶ 7.

On the morning of Monday, September 28, Mr. Jeffcoat emailed Mr. Dan the revised "skeleton crew" of employees that would remain employed after the World Marketing entities filed for bankruptcy, as well as a proposed communication plan explaining that World Marketing intended to announce the layoffs contemporaneously with the filing of the bankruptcy petitions. *Id.* ¶ 13. World Marketing also signed Crane Heyman's engagement letters and took official board action to authorize Crane Heyman's retention and to authorize the bankruptcy filings. *Id.* That afternoon around 3:00 p.m., Crane Heyman filed chapter 11 bankruptcy petitions on behalf of World Marketing's Chicago, Dallas, and Atlanta

subsidiaries in the United States Bankruptcy Court for the Northern District of Illinois. *Id.* ¶ 8; R. 94-2 at 98-103. Shortly thereafter, Mr. Jeffcoat sent an email to every World Marketing employee with a World Marketing email account announcing that the company had filed for bankruptcy, was "shutting down operations," and would only retain a "small number" of employees. R. 123 ¶ 9; R. 110 ¶ 15. Mr. Jeffcoat's email further informed the employees that there was "still *a possibility* that the assets or a portion of the assets of World Marketing may be acquired by a new owners [sic] who need a workforce," and asked employees who were interested in continuing to work under new ownership to communicate their interest. R. 94-2 at 104 (emphasis in original). Mr. Jeffcoat also attached an "FAQ" sheet to his email with additional information about salary and benefits. R. 110 ¶ 15. For employees without a company email address, designated leaders presented the information contained in Mr. Jeffcoat's email and handed out paper copies of the FAQ sheet. *Id.* ¶ 16. Mr. Dan provided input on the message before it was sent to employees. *See* R. 94-2 at 56-61.

After the bankruptcy actions commenced, the bankruptcy court approved Crane Heyman's retention as World Marketing's counsel. R. 123 ¶ 11. On September 29, the World Marketing entities submitted motions seeking authority to use cash collateral in which they represented that they were reorganizing, not liquidating. *See In re World Marketing Chicago, LLC*, 564 B.R. 587, 602 (Bankr. N.D. Ill. 2017) ("each Debtor asserted that the cash collateral was necessary 'to continue to *operate its business* and manage its financial affairs, and effectuate an effective *plan of*

4

*reorganization*[.]") (alteration and emphasis in original) (quoting World Marketing's cash collateral motions). The next day, Mr. Dan emailed Mr. Jeffcoat and others regarding the potential for a going concern sale. R. 110 ¶ 22. World Marketing ultimately received at least one offer to purchase the assets of one or more of the World Marketing entities on a going-concern basis. *Id.* ¶ 24. On October 7, each World Marketing debtor filed motions for authorization to pay prepetition payroll. *In re World Marketing Chicago, LLC*, 564 B.R. at 602. In their motions, World Marketing stated that failure to pay its payroll in a timely fashion would 'jeopardize *its ability to reorganize."* Id.* (emphasis in original) (quoting World Marketing's payroll motions). The company also submitted sworn affidavits stating that if authority was not granted, the debtors would be forced to "cease business operations" and "have no alternative other than liquidation." *Id.* Based on these representations, the court authorized payment of the payroll. *Id.* at 602-03.

On October 21, 2015, a putative class of former World Marketing employees (the "WARN class") sued World Marketing under the WARN Act for failure to serve a timely WARN notice. R. 110 ¶ 26. In a November 23, 2015 letter to its former employees, World Marketing explained that it was operating with a limited staff during bankruptcy while it marketed its assets for sale, either as a going concern or in liquidation. R. 94-2 at 174. The letter concluded by referencing the WARN Act and stating that "World Marketing could not give 60 days' advance notice of the termination of most operations and consequent bankruptcy filings due to business circumstances that were not reasonably foreseeable at the time that notice would

have been required." *Id.* In particular, "[t]he actions taken by World Marketing's lender and the cessation of negotiations with an investor were sudden, dramatic and unexpected events that were outside of World Marketing's control." *Id.*

In early 2016, pursuant to an agreement with the WARN class, the WARN plaintiffs voluntarily dismissed their lawsuit and refiled their claim in the bankruptcy case. R. 110 ¶ 30; R. 123 ¶ 12. In July 2016, the Trustee was appointed to manage the liquidating trust assets and obligations, including defending against the WARN claim. R. 110 ¶ 32. The Trustee then retained Sugar, Felsenthal, Grais & Helsinger as its counsel.[1] *Id.* ¶ 33. The WARN class filed an application seeking payment of WARN Act damages, which the Trustee opposed by arguing that World Marketing qualified for the Act's liquidating fiduciary exception. *Id.* ¶¶ 34-35. The Trustee did not raise any other defenses. R. 123 ¶ 26. In February 2017, the bankruptcy court granted the WARN class's claim and the Trustee appealed. R.110 ¶¶ 37-38. The Trustee and the WARN class settled while the matter remained on appeal, and the bankruptcy court approved the settlement in February 2018. *Id.* ¶¶ 39, 41.

The Trustee filed this lawsuit alleging that Crane Heyman committed malpractice by failing to advise World Marketing to timely issue a WARN notice. R. 123 ¶ 29. The Trustee moved for partial summary judgment on Crane Heyman's

---

[1] Sugar Felsenthal was serving as counsel for the unsecured creditors' committee in the bankruptcy case and had helped World Marketing draft the notice that was sent to former World Marketing employees on November 23, 2015. R. 110 ¶¶ 25, 27.

second (viability doctrine), third (negligence of plaintiff), and fourth (intervening cause) affirmative defenses.

## Analysis

The WARN Act "requires 'employers' (defined as businesses with 100 or more full-time employees) to provide employees with written notice of impending 'plant closings' or 'mass layoffs' at least sixty days prior to the closing or layoffs." *Ellis v. DHL Exp. Inc. (USA)*, 633 F.3d 522, 525 (7th Cir. 2011) (citations omitted). If an employer fails to provide the requisite notice, "it is liable to provide 'each aggrieved employee' with back pay and benefits for each day that the WARN Act was violated." *Id.* at 526.

Crane Heyman contends that three exceptions to the WARN Act – the liquidating fiduciary exception, the unforeseen business circumstances exception, and the faltering company exception – eliminated the WARN notice requirement. Crane Heyman's viability, negligence of plaintiff, and intervening cause affirmative defenses all primarily assert that the Trustee lost its objection to the WARN class's claim because it failed to properly raise these exceptions before the bankruptcy court (and is thus responsible for its own loss). The Trustee contends that the exceptions were not viable as a matter of law to defend against the claim. It seeks to preclude Crane Heyman from arguing at trial that properly raising them would have established that no WARN Act violation occurred. Thus, to decide the Trustee's motion for partial summary judgment, the Court must determine whether the WARN Act exceptions were viable defenses to the WARN claim.

I. Liquidating Fiduciary Exception

Crane Heyman first argues that World Marketing did not need to serve a WARN notice because it was a "liquidating fiduciary" rather than an "employer" at the time notice would have been required (no later than September 28, 2015). The WARN Act defines "employer" as "any business enterprise that employs (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2101(a)(1). This exception does not derive from the statute itself, but rather comes from the Department of Labor's response to public comments suggesting that fiduciaries in bankruptcy proceedings should be excluded as employers under the Act. In response to those comments, the Department of Labor wrote:

> [A] fiduciary whose sole function in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a "business enterprise" in the normal commercial sense. In other situations, where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation.

54 Fed. Reg. 16,042, 16,045 (1989). Based on the Department of Labor's statement, some courts have held that a liquidating fiduciary is not an employer under the WARN Act because it is not operating a business enterprise. *Carroll v. World Marketing Holdings, LLC*, 2019 WL 6271078, at *7 (E.D. Wis. Nov. 21, 2019) (citing *In re United Healthcare System, Inc.*, 200 F.3d 170, 176-179 (3d Cir. 1999)); *In re MF Global Holdings Ltd.*, 481 B.R. 268, 282 (Bankr. S.D.N.Y. 2012).

The Seventh Circuit has not yet had occasion to rule on whether "employer" excludes liquidating fiduciaries. But even assuming the Seventh Circuit recognizes this exception, World Marketing did not qualify as a liquidating fiduciary at the time notice should have been provided. Two courts have already directly so held, and this Court agrees. *See In re World Marketing Chicago*, 564 B.R. at 603; *Carroll*, 2019 WL 6271078, at *9 (E.D. Wis. Nov. 21, 2019). The exception applies only to fiduciaries whose "sole function" is to "liquidate a failed business." As *In re World Marketing Chicago* and *Carroll* both explain, there exists ample evidence that liquidation was not World Marketing's "sole function" when it declared bankruptcy on September 28, 2015. The day after the bankruptcy filings, World Marketing sought authority to use cash collateral "to continue to *operate its business* and . . . effectuate an effective *plan of reorganization*." *See supra* pp. 4-5. On September 30, Mr. Dan emailed Mr. Jeffcoat about selling World Marketing on a going concern basis, and the company eventually received at least one offer. *Id* at 5. On October 7, World Marketing represented to the bankruptcy court that failure to pay its payroll would "jeopardize *its ability to reorganize*" and leave it with "no alternative other than liquidation." *Id.* Nearly two months after filing for bankruptcy, World Marketing wrote to its employees that the company was marketing its assets for sale "either as a going concern or in liquidation," and that the facilities would remain permanently closed "[*i*]*f* the assets are not sold as a going concern." *Id.*; R. 94-2 at 174 (emphasis added).

Crane Heyman argues that the Trustee failed to provide evidence to the bankruptcy court of World Marketing's intent to liquidate. Even if true, the relevant

9

question is not whether World Marketing considered liquidation – indeed, the company ultimately liquidated – but whether it was solely preparing to liquidate when WARN notice should have been issued. There is no reasonable view of the evidence that permits that conclusion.

Crane Heyman's reliance on *In re United Healthcare System* is unavailing. In that case, and as *Carroll* points out, United Healthcare "had unequivocally expressed its intent to use the bankruptcy solely to liquidate." *Carroll*, 2019 WL 6271078, at *8 (distinguishing United Healthcare's actions from World Marketing's actions at the time of bankruptcy). When United Healthcare filed for bankruptcy, it had already accepted an offer to purchase its assets and close the hospital. *In re United Healthcare System*, 200 F.3d at 173. It had surrendered the certificates that allowed it to operate as a healthcare provider, and it filed a voluntary bankruptcy plan under which it would cease to exist. *Id.* at 178. And the remaining employees were performing tasks solely designed to prepare for liquidation. *Id.* In reaching its conclusion, the court noted that "[h]ad United Healthcare's conduct and activities demonstrated a bona fide effort toward reorganization, the evidence may have shown that United Healthcare was an 'employer' subject to the WARN Act." *Id.* As previously discussed, World Marketing was not solely preparing for liquidation on September 28, 2015, and the company's conduct and representations after filing for bankruptcy demonstrated a bona fide attempt at reorganization. *See Carroll*, 2019 WL 6271078, at *9 (concluding the same). There is thus no genuine issue of material fact that World Marketing was not a liquidating fiduciary at the time WARN Act notice was required.

10

Thus, the liquidating fiduciary exception was not a viable defense to the WARN class's claim.

II.  Unforeseen Business Circumstances and Faltering Company Exceptions

Unlike the liquidating fiduciary exception, the unforeseen business circumstances and faltering company exceptions come from the WARN Act itself. The former provides that "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(a). The latter applies if "as of the time that notice would have been required the employer was actively seeking capital or business, which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business." *Id.* 2102(b)(1).

The Trustee moves for summary judgment to preclude Crane Heyman from arguing that the Trustee should have raised these statutory exceptions before the bankruptcy court, and that they would have defeated the WARN class's claim. The Trustee contends that the exceptions were unavailable because World Marketing failed to give proper shortened WARN notice. The Trustee bases its position on 29 U.S.C. § 2102(b)(3), which provides that "[a]n employer relying on this subsection [the subsection containing the faltering company and unforeseen business circumstances

11

exceptions] shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period."

Crane Heyman responds: 1) the unforeseen business circumstances and faltering company exceptions as applied in this case eliminated the need to provide WARN notice; and 2) the materials provided to terminated employees on September 28, 2015 satisfied the notice requirement.

a) Did the unforeseen business circumstances and faltering company exceptions excuse providing WARN Act notice?

Crane Heyman's argument that the notice requirement was eliminated relies primarily on the Seventh Circuit cases *Pena v. American Meat Packing Corp.*, 362 F.3d 418 (7th Cir. 2004) and *Roquet v. Arthur Andersen, LLP*, 398 F.3d 585, 586 (7th Cir. 2005). In *Pena*, a class of employees sued their former employer under the WARN Act after it closed its Chicago facility without giving them prior notice. The district court granted summary judgment for the defendant based on the unforeseen business circumstances exception. The Seventh Circuit reversed, holding that there existed a genuine issue of material fact as to whether the business conditions that caused the shutdown were unforeseeable. 362 F.3d at 422. In reaching its conclusion, the court wrote that "[u]nder WARN, the required 60-day notice period may be reduced *or eliminated* if the closing was caused by 'business circumstances that were not reasonably foreseeable as of the time that notice would have been required.'" *Id.* at 421 (emphasis added). Drawing on the "reduced or eliminated" language, Crane Heyman contends that World Marketing was still finalizing the list of employees to

terminate on September 28, 2015, and providing "notice on the day of the layoffs (or afterwards) would have been utterly futile." R. 108 ¶ 50. Accordingly, Crane Heyman concludes, the need to provide notice was "eliminated." But the language in *Pena* concerned whether the "60-day *notice period*" could be eliminated – i.e., whether advance notice is always necessary – not whether *notice* can be eliminated entirely. As *Carroll* points out, *Pena* does not suggest that compliance with 29 U.S.C. § 2102(b)(3) was even raised as an issue in the case. *See Carroll*, 2019 WL 6271078, at *10.

Similarly, in *Roquet*, the issue was whether the district court properly granted summary judgment for an employer based on the unforeseen business circumstances exception. The Seventh Circuit affirmed, and in doing so stated that "the Act's 60-day-notice obligation is eliminated, or reduced to a shorter term, if a mass layoff or plant closing is 'caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.'" 398 F.3d at 586 (quoting 29 U.S.C. § 2102(b)(2)(A)). But as in *Pena*, the court's statement about elimination relates to the "*60-day-notice* obligation," not the obligation to provide notice more generally.[2]

---

[2] Crane Heyman's reliance on *Watson v. Michigan Indus. Holdings, Inc.*, 311 F.3d 760 (6th Cir. 2002) and *Hotel Employees & Rest. Employees Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175 (3d Cir. 1999) fails for the same reason. Namely, both decisions concern whether the unforeseen business circumstances exception applied under 29 U.S.C. § 2102(b)(2)(A). They do not address whether notice may be eliminated entirely under 29 U.S.C. § 2102(b)(3).

13

Indeed, Crane Heyman's interpretation ignores the WARN Act's plain language that employers relying on the statutory exceptions still must give "as much notice as is practicable." 29 U.S.C. § 2102(b)(3). And the Department of Labor regulations instruct that "as much notice as is practicable . . . may, in some circumstances, be notice after the fact." 20 C.F.R. § 639.9. Thus, the Court concludes that even if World Marketing qualified for the unforeseen business circumstances or faltering company exceptions, it was still required to provide WARN Act notice as soon as was practicable.

b) Did the September 28, 2015 materials provided to employees comply with the WARN Act?

Crane Heyman next argues that even if notice was required, the materials World Marketing gave employees on September 28, 2015 constituted adequate notice under the Act. The Court disagrees.

An employer relying on section 2102(b)(3) must "give a brief statement of the basis for reducing the notification period" at the time shortened notice is provided. 29 U.S.C. § 2102(b)(3); *see also* 20 C.F.R. § 639.9 ("The employer must, at the time notice actually is given, provide a brief statement of the reason for reducing the notice period, in addition to the other elements set out in § 639.7."). Neither the Termination Notice nor the FAQ – the materials the parties agree were emailed to World Marketing's employees – contains a statement explaining the basis for reducing the notice period. Accordingly, World Marketing did not give proper notice under the Act. S*ee* R.94-2 at 104-05.

Crane Heyman contends that the following statement was read to affected employees on the date of termination and satisfied the brief statement requirement: "The group of investors who purchased World Marketing from Berkshire Hathaway almost a year ago had great expectations but was never able to achieve the momentum necessary to sustain the operation. The investment needed to operate the business fell short and the company ran out of money." R. 124-1 ¶ 14. There are several problems with this argument. First, and most importantly, Crane Heyman presents no evidence that that this statement was ever actually read (even assuming the brief statement did not need to be in writing, which the Court highly doubts). Crane Heyman cites to a draft of the letter that Mr. Jeffcoat eventually emailed to employees, but the relevant language does not appear in the final version that was sent. And Mr. Jeffcoat emailed Mr. Dan that the business leaders responsible for communicating with employees merely "presented what was in the email. They handed out the attachment." R. 94-2 at 132. Crane Heyman offers no evidence to the contrary. Second, even assuming the relevant language was read, it only provides a reason why the company was closing its facilities. It does not explain why World Marketing could not provide 60 days' notice, it does not reference the WARN Act, and it does meet the requirement that "[a]ll notice must be specific." 20 C.F.R. § 639.7(a)(1). These shortcomings become particularly clear when compared to the November 23, 2015 letter, which specifically references the WARN Act and states that the company could not give 60 days' advance notice because the "actions taken by World Marketing's lender and the cessation of negotiations with an investor were

15

sudden, dramatic and unexpected events that were outside of World Marketing's control." R. 94-2 at 174. Accordingly, the September 28, 2015 notice did not comply with section 2102(b)(3).[3] *See Carroll*, 2019 WL 6271078, at *11 (also concluding that World Marketing's September 28, 2015 notice did not comply with the WARN Act).

c)  Ramifications of not issuing proper WARN notice

The Trustee contends that failure to give proper shortened WARN notice precludes an employer from relying on the statutory exceptions entirely. And because World Marketing never gave proper notice, the Trustee concludes, the exceptions were not viable defenses to the WARN class's claim. Crane Heyman argues that if a statutory exception applies and no WARN notice is sent, then the employer is only liable for the reduced notice period, and thus the Trustee should have raised the exceptions before the bankruptcy court to limit World Marketing's liability. Courts to consider the issue appear to have uniformly held that giving proper shortened notice is a prerequisite to invoking one of the statutory exceptions. *See, e.g., Weekes-Walker v. Macon Cty. Greyhound Park, Inc.*, 877 F. Supp. 2d 1192, 1206 (M.D. Ala. 2012) ("the case law . . . is unanimous in its support of the view that § 2102(b)(3) imposes a firm requirement of notice prior to being able to rely on one of the defenses listed in § 2102(b)(1)-(2)."), *aff'd in part, rev'd in part on other grounds sub nom. Sides v. Macon*

---

[3] The WARN Act also requires that written notice be sent to state and local officials where the closing or layoff is to occur. *See* 29 U.S.C. § 2102(a)(2); *see also* 20 C.F.R. § 639.7(e) (listing the information that must be provided in the notices sent to state and local government officials). Crane Heyman admits that World Marketing failed to provide notice to the relevant state officials on or before September 28, 2015. R. 110 ¶ 21. That provides an independent basis for concluding that World Marketing did satisfy WARN Act requirements as of September 28, 2015.

16

*Cty. Greyhound Park, Inc.*, 725 F.3d 1276 (11th Cir. 2013); *In re Dewey & LeBoeuf LLP*, 507 B.R. 522, 533 (Bankr. S.D.N.Y. 2014) ("even under dire circumstances, employers must deliver written WARN notices containing the necessary brief statements to qualify for the WARN Exceptions."); *In re Jamesway Corp.*, 235 B.R. 329, 342 (Bankr. S.D.N.Y. 1999) ("the statute and regulations clearly provide that an employer cannot invoke either exception without giving some written WARN notice."); *Torres v. Niche, Inc.*, 2013 WL 6655415, at *3 (D. Mass. Dec. 18, 2013) ("it is clear that some notice is required before an employer may seek shelter under the [unforeseen business circumstances] exception."). This requirement exists in part to allow employees to assess whether the notice period was properly shortened, *see Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996) (citing *Alarcon v. Keller Indus.*, 27 F.3d 386, 389 (9th Cir. 1994)), and also "to prohibit employers who have failed to provide the requisite 60-day notice from asserting litigation-convenient but factually *post hoc* justifications for their actions." *Sides v. Macon Cty. Greyhound Park, Inc.*, 725 F.3d 1276, 1285-86 (11th Cir. 2013) (quoting *Weekes-Walker*, 877 F. Supp. 2d at 1207).

The two cases cited by Crane Heyman do not suggest otherwise. To the contrary, in both instances, the employers provided WARN Act notice at the time of the terminations. *See Pena v. American Meat Packing Corp.*, 258 F. Supp. 2d 864, 870 (N.D. Ill. 2003) (reproducing WARN notice sent to employees), *rev'd*, 362 F.3d 418 (7th Cir. 2004); *Jones v. Kayser-Roth Hosiery, Inc.*, 748 F. Supp. 1292, 1296 (E.D. Tenn. 1990) (referencing the date notice was given), *amended*, 753 F. Supp. 218 (E.D.

Tenn. 1990). Accordingly, the Court finds that World Marketing's failure to provide proper shortened WARN notice precluded it from relying on the statutory exceptions.[4]

The Court concludes that the liquidating fiduciary, unforeseen business circumstances, and faltering company exceptions were not viable as a matter of law to defend against the WARN class's claim. The Court grants summary judgment for the Trustee on Crane Heyman's second and fourth affirmative defenses. The Court further grants summary judgment on Crane Heyman's third affirmative defense to the extent it concerns the Trustee's failure to raise the WARN Act exceptions before the bankruptcy court.[5]

III.  Contributory Negligence

Apart from the WARN Act exceptions, Crane Heyman's affirmative defense of contributory negligence alleges that Mr. Dan raised the issue of WARN notice in the parties' initial conversation, and World Marketing informed him that it had already been advised on the matter and had determined that the WARN Act did not apply. The parties' briefs barely mention the issue. As best the Court can discern, Crane Heyman's position is that it satisfied its professional obligations by raising the issue

---

[4] Crane Heyman does not argue that the November 23, 2015 notice cured World Marketing's September 28, 2015 violation. But regardless, this belated notice did not satisfy World Marketing's obligation because it was not issued as soon as was "practicable." *See Local 1239, Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers v. Allsteel, Inc.*, 1995 WL 348028, at *4 (N.D. Ill. June 7, 1995) (holding that additional notice that was delayed for ten days was not provided as soon as practicable).

[5] Crane Heyman argues at length that the Trustee lacked a financial incentive to oppose the WARN class's claim and thus intentionally mounted an ineffective defense. But this is tangential to what the Court needs to decide in this motion – whether WARN Act exceptions were viable defenses to the class's claim.

18

of WARN notice and was not required to do anything further once World Marketing said it had already been advised. The Trustee contends that Crane Heyman had an affirmative duty to correct World Marketing's misunderstanding but cites no case law to that effect. This raises questions about the scope of the attorney-client relationship. If Crane Heyman's obligations did not include advising on the WARN Act, then its attorneys could not have been negligent for failing to do so. *See Schmidt v. Hindshaw, Culbertson, Moelmann, Hoban & Fuller*, 75 Ill. App. 3d 516, 522 (Ill. App. Ct. 1979) ("an attorney's duty to his client exists in relation to the representation sought by the client and the scope of the authority conferred."). If Crane Heyman's obligations included advising about the WARN Act, a reasonable jury could find that the firm was negligent in not correcting World Marketing's misunderstanding. The Trustee has not provided a reason why the Court should grant summary judgment on this issue. Accordingly, the Trustee's motion as to this portion of Crane Heyman's affirmative defense is denied. If there is a reason this question should not go to the jury – i.e., whether World Marketing was contributorily negligent for telling Crane Heyman that it had already been advised about the WARN Act and had determined that it did not apply – the parties should raise the issue in a motion *in limine.*

## Conclusion

For the reasons stated above, the Trustee's motion for partial summary judgment on Crane Heyman's second and fourth affirmative defenses is granted. The Trustee's motion on Crane Heyman's third affirmative defense is granted to the extent that it concerns the Trustee's failure to properly raise viable exceptions to the

WARN Act and denied in all other respects. The effect of granting partial summary judgment on Crane Heyman's second and fourth affirmative defenses, as well as its third affirmative defense to the extent discussed above, is that Crane Heyman may not argue or otherwise raise at trial that the Trustee lost its objection to the WARN claim by failing to properly raise the Act's exceptions.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: January 22, 2020