UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORMAN B. NEWMAN, as Liquidating Trustee of the World Marketing Trust, <br><br> Plaintiff, <br><br> v. <br><br> CRANE, HEYMAN, SIMON, WELCH, & CLAR, <br><br> Defendant. | No. 17 C 6978 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Norman B. Newman, liquidating trustee of the World Marketing Liquidating Trust ("Trustee"), sued law firm Crane, Heyman, Simon, Welch & Clar ("Crane Heyman") for failing to advise World Marketing of its obligations under the Worker Adjustment and Retraining Notification Act ("WARN Act"). Crane Heyman moved for summary judgment. R. 168. For the following reasons, Crane Heyman's motion is denied.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To

defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

The Court assumes the parties' familiarity with its prior summary judgment order, which provides a detailed factual background of the case, and which the Court hereby incorporates by reference. *See* R. 172. As relevant here, in September 2015, World Marketing, LLC, World Marketing Atlanta, LLC, and World Marketing Dallas, LLC (together "World Marketing") retained law firm Crane Heyman and filed petitions for chapter 11 bankruptcy. R. 188 ¶¶ 1-2. In October 2015, a putative class of former World Marketing employees (the "WARN class") sued World Marketing under the WARN Act for failure to serve a timely WARN notice, which requires 60 days' advance notice before an employer with 100 or more employees orders a plant closing or mass layoff. *Id.* ¶ 4; *see* 29 U.S.C. §§ 2101-2102. In February 2016, the WARN class refiled its claim as a class proof of claim in the bankruptcy case. R. 188 ¶ 5. That July, as part of an amended liquidation plan, a liquidating trust was created for the benefit of World Marketing's creditors. *Id.* ¶ 7. All of World Marketing's assets, claims, and causes of action were vested in the trust, and the Trustee was appointed to manage the trust's assets and obligations, including defending against the WARN

claim. *Id.* Over the Trustee's objection, the bankruptcy court approved the WARN class's claim in February 2017. *Id.* ¶ 14.[1] In September 2017, counsel for the WARN class sent the Trustee her damages calculation, which totaled $4,217,850.79. *Id.* ¶¶ 18-19. Two days later, the Trustee filed this malpractice action against Crane Heyman for failing to advise World Marketing of its obligations under the WARN Act. R. 1.

While the bankruptcy court's decision approving the WARN class's claim was on appeal, the WARN class and the Trustee settled the claim for the exact amount calculated by the class's counsel. R. 188 ¶ 20; R. 110 ¶¶ 38-39. The bankruptcy court approved the settlement agreement in February 2018, but the trust did not have enough assets to satisfy the full amount. R. 188 ¶¶ 37, 40.[2] Under the settlement agreement, if the money owed to the WARN class was "not satisfied from existing cash," it was to be "paid on a pro rata basis with any other unpaid administrative priority claims that have been allowed by final order of the Bankruptcy Court." *Id.* ¶ 39. The Trustee has made one payment of $244,213.56 to the WARN class. *Id.* ¶ 26. As of the Trustee's January 8, 2020 report, the trust's assets include $21,065.63 in its accounts, a $345,000 settlement in a different action, and this malpractice suit. *Id.* ¶ 24. Its outstanding debts include $10 million in general unsecured claims, $825,000

---

[1] The Trustee's defense against the WARN claim is the subject of significant dispute in this lawsuit but is not relevant for purposes of this motion.
[2] Crane Heyman did not respond to the Trustee's statement of material facts and thus the Court deems those facts admitted for purposes of this motion. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

3

in priority claims, and the remaining $3,973,637.23 balance of the WARN settlement. *Id.* ¶ 27.

## Analysis

To bring a successful action for legal malpractice, a plaintiff must prove: (1) "the defendant attorney owed the plaintiff client a duty of care arising from an attorney-client relationship, (2) the attorney breached that duty, (3) the client suffered an actual injury in the form of actual damages, and (4) the actual damages resulted as a proximate cause of the breach." *Fox v. Seiden*, 887 N.E.2d 736, 742 (Ill. App. Ct. 2008) (citing *Governmental Interinsurance Exch. v. Judge*, 850 N.E.2d 183, 186-87 (Ill. 2006)). "Where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists. Damages are considered to be speculative, however, only if their existence itself is uncertain, not if the amount is uncertain or yet to be fully determined." *N. Ill. Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 837 N.E.2d 99, 107 (Ill. 2005) (internal citation omitted).

Crane Heyman contends that summary judgment is warranted because the Trustee has not suffered actual damages. The gravamen of its argument is that its alleged failure to advise World Marketing to issue a WARN notice had no practical effect. Either way, World Marketing was going out of business and the WARN claim merely "added another unpayable liability onto [its] mountain of unpayable debts." R. 169 ¶ 28. In short, Crane Heyman asks the Court to find that a law firm cannot be held responsible for malpractice committed against an insolvent party.

4

To support its position, Crane Heyman points out that in legal malpractice actions based on an attorney's failure to properly prosecute a claim, "the plaintiff must plead and prove the existence of a solvent defendant in the underlying claim." *Sheppard v. Krol*, 578 N.E.2d 212, 216 (Ill. App. Ct. 1991). But Illinois courts have long distinguished between legal malpractice claims involving attorneys who were hired to prosecute a claim and those involving attorneys who were hired to defend a claim. *See Gruse v. Belline*, 486 N.E.2d 398, 404 (Ill. App. Ct. 1985) ("*Goldzier* is inapposite, for the attorneys in that case were hired to prosecute, not defend a claim[.]"). For cases involving an attorney's negligence who has been retained to defend an action, *Gruse* adopted the judgment rule, which establishes that an unpaid judgment constitutes proof of actual damages for purposes of a legal malpractice claim. *Id.* ("plaintiff introduced into evidence the two judgments against him, and we believe this was proper proof of damages absent any evidence to the contrary.").

The judgment rule was reaffirmed in *Fox v. Seiden*, 887 N.E.2d 736 (Ill. App. Ct. 2008). In *Fox*, the trustee of a bankruptcy estate filed a legal malpractice claim arising from a judgment against the debtor ordering the payment of more than $1 million in attorneys' fees. The defendant law firm filed a motion to dismiss, arguing that plaintiff's claim of damages based on an unpaid fee judgment was insufficient to constitute actual damages for purposes of legal malpractice. 887 N.E.2d at 744. Specifically, and like Crane Heyman here, the firm contended that "[u]nless [the debtor's] assets collected by the trustee were sufficient to satisfy in full her other creditors, she will never sustain actual damages." R. 187-2 at 6. *Fox* rejected this

5

argument, holding that "[i]n line with *Gruse*, we find the unpaid judgment against [the debtor] resulting from the law firm's negligence 'was evidence of actual damages even though it remained unpaid.'" *Id.* at 746 (quoting *Gruse*, 486 N.E.2d at 404).

Crane Heyman does not dispute that its failure to advise World Marketing to issue a WARN notice was in effect a failure to defend against a claim that would otherwise be governed by the judgment rule. However, it argues that this case is different because the defendant attorneys in *Gruse* and *Fox* did not introduce evidence that the judgment would remain unpaid (again, because World Marketing's estate lacks sufficient assets to satisfy it). Crane Heyman contends that this presents the judgment rule's "evidence to the contrary" exception contemplated in *Gruse*. But Crane Heyman fails to cite a single case to support that by "evidence to the contrary," *Gruse* meant situations in which a legal malpractice plaintiff is insolvent and lacks the ability to pay its debts in full. And indeed, *Northern Illinois Emergency Physicians* suggests that it did not. In that case, NIEP sued two law firms for failing to adequately defend against an indemnity claim brought by a third party. After the circuit court granted summary judgment for the defendants because NIEP had not paid the judgment, the appellate court reversed, holding that payment of the judgment was not a prerequisite to a legal malpractice action. 837 N.E.2d at 105. On appeal to the Illinois Supreme Court, the law firms argued that NIEP had not suffered damages because it had paid nothing towards the judgment, the third party had never even attempted to collect it, and any attempt to enforce it in the future would be futile because NIEP had transferred all of its significant assets to a

6

successor partnership and thus was judgment proof. *Id.* at 108. They further argued that because the materials they adduced in support of their summary judgment motion showed that NIEP was unlikely to ever pay the judgment, the burden should have shifted to NIEP to produce evidence that it suffered pecuniary injury. *Id.* at 109. Although the Illinois Supreme Court reversed the appellate court on unrelated grounds not raised by the parties, it specifically noted that "the flaw in the appellate court's judgment is not related to shifting burdens of production, nor does it turn on whether the existence of an unsatisfied judgment is sufficient, in and of itself, to withstand a challenge to the damages element of a legal malpractice claim on a motion for summary judgment." *Id.* While dicta, this statement is informative of how the Illinois Supreme Court would receive Crane Heyman's argument. *See Fox*, 887 N.E.2d at 745 ("the supreme court [in *NIEP*] expressly declined to reverse the appellate court's judgment 'on whether the existence of an unsatisfied judgment is sufficient, in and of itself, to withstand a challenge to the damages element of a legal malpractice claim on a motion for summary judgment.").

Moreover, in the context of an insurance bad faith dispute, Illinois courts have held that "an insolvent estate can be damaged by a judgment against it," and that the "very fact of entry of judgment constitutes damage and harm sufficient to permit recovery." *Smiley v. Manchester Ins. & Indem. Co. of St. Louis*, 301 N.E.2d 19, 22 (Ill. App. Ct. 1973) (citing *Wolfberg v. Prudence Mut. Cas. Co. of Chicago*, 240 N.E.2d 176 (Ill. App. Ct. 1968)). Crane Heyman contends that *Smiley* has no relevance because insurance bad faith cases present "a completely different context than legal

7

malpractice." R. 192 ¶ 19. But in adopting the judgment rule for legal malpractice actions, *Gruse* specifically cited to an insurance case for the proposition that "[i]n Illinois, an accepted measure of damages for breach of an insurance contract to defend is the amount of the judgment rendered against the insured." *Gruse*, 486 N.E.2d at 404 (citing *Thornton v. Paul*, 384 N.E.2d 335 (Ill. 1978)).

Crane Heyman cites *Tri-G, Inc. v. Burke Bosselman & Weaver*, 856 N.E.2d 389 (Ill. 2006), and *Sterling Radio Stations, Inc. v. Weinstine*, 765 N.E.2d 56 (Ill. App. Ct. 2002), for the proposition that a plaintiff in a legal malpractice suit may not obtain a windfall. R. 192 ¶ 26. Those cases do not change the Court's analysis. *Tri-G* not only involved malpractice for failure to properly *prosecute* a claim, but the court's analysis centered on whether it would advance the policy of punitive damages to allow a malpractice plaintiff to recover those damages from a negligent law firm, an issue that has no bearing on this case. 856 N.E.2d at 417-18. In *Sterling Radio*, the plaintiff sued after a collateral source had already paid the judgment suffered as a result of the malpractice. 765 N.E.2d at 61-62. Here, there is no dispute that the WARN claim remains largely unpaid (or that the part that was paid came from World Marketing's estate). Nor does the Court agree with Crane Heyman that the WARN settlement is the source of a potential windfall. Crane Heyman argues that without the WARN claim, the Trustee would have just over $3 million to distribute to creditors, but with the WARN claim, that amount balloons to $7.2 million. But this ignores that without the WARN claim, World Marketing's estate would also have $4.2 million less in outstanding liabilities. In short, there is no question that World Marketing would

8

have suffered damages if it were still solvent. The Court does not believe that the calculus changes simply because World Marketing is now insolvent. As Crane Heyman seems to acknowledge, accepting its argument would mean that law firms representing insolvent defendants are immune from malpractice actions. The Court thinks this result unsound as both a matter of law and policy.

Nor are Crane Heyman's other arguments persuasive. First, it contends that permitting damages in this case would be akin to a "deepening insolvency" theory, which many courts have rejected. "Deepening insolvency" is a "controversial theory [that] allows damages sometimes to be awarded to a bankrupt corporation that by delaying liquidation ran up additional debts that it would not have incurred had the plug been pulled sooner." *Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 908 (7th Cir. 2007) (internal citation omitted); *see also In re Global Serv. Grp., LLC*, 316 B.R. 451, 456 (Bankr. S.D.N.Y. 2004) ("Deepening insolvency" refers to the 'fraudulent prolongation of a corporation's life beyond insolvency,' resulting in damage to the corporation caused by increased debt.") (quoting *Schacht v. Brown*, 711 F.2d 1343, 1350 (7th Cir. 1983)). There is no contention that Crane Heyman helped prolong World Marketing's corporate life, and "[w]here an independent cause of action gives a firm a remedy for the increase in its liabilities . . . then the firm may recover, without reference to the incidental impact upon the solvency calculation." *In re CitX Corp., Inc.*, 448 F.3d 672, 678 (3d Cir. 2006) (quoting Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law. 549, 575 (2005)). Here, that independent cause of action is legal malpractice. Deepening insolvency is thus irrelevant.

Crane Heyman also contends that only World Marketing's creditors have suffered damages, and that they have no standing to bring this action because Crane Heyman did not owe them a duty. The Seventh Circuit has expressly rejected this argument. *Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 909 (7th Cir. 2007) ("Ernst & Young has no duty of care to the creditors. But it does of course have such a duty to its client, Taurus, and that duty, on which this suit is founded, does not evaporate just because the client is bankrupt and any benefits from suing will accrue to its creditors.") (applying Indiana law). Crane Heyman asserts that this reasoning was rejected by *Schechter v. Blank*, 627 N.E.2d 106 (Ill. App. Ct. 1993). But in *Schechter*, the plaintiffs sought to establish that creditors were the intended beneficiaries of the defendant attorney's representation of two companies in their chapter 11 reorganizations. In rejecting that argument, the court merely reaffirmed that an attorney generally owes a duty only to his client. 627 N.E.2d at 109-10. Meanwhile, *Fehribach* concerns whether a duty to *a client* evaporates because the benefits will ultimately flow to its creditors. The cases are thus not in conflict. But Crane Heyman continues that even if its duty to World Marketing did not evaporate when it became insolvent, the Trustee's recovery should be limited to the amount it has paid to the WARN class ($244,213.56) plus any attorneys' fees it accrued in defending against the claim, and that the remaining unpaid balance should be ignored. But that of course is just another way of asking the Court to reject the judgment rule, which as previously discussed, has been routinely applied by Illinois courts, and from which Crane Heymans provides no persuasive reason to depart. *See Fox*, 887 N.E.2d at 744

(rejecting law firm's argument that "'it is not the judgment rendered against [the debtor] but rather the net that she paid to satisfy that judgment' that constitutes her actual damages.") (quoting law firm's appellate brief).

Finally, Crane Heyman argues that public policy supports its position because the Trustee and its law firm defended against the WARN claim in bad faith (which the Trustee denies). But if Crane Heyman believes that to be true, the law provides other remedies of which Crane Heyman may avail itself that fall short of adopting a rule that law firms may commit malpractice against insolvent defendants with impunity.

## Conclusion

For the reasons stated above, Crane Heyman's motion for summary judgment, R. 168, is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 16, 2020